UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MELISSA DIMACALI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. C-09-111 |
| | § | |
| CARDIOLOGY ASSOCIATES OF | § | |
| CORPUS CHRISTI, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Plaintiff Melissa Dimacali ("Dimacali") has sued Defendant Cardiology Associates of Corpus Christi (CACC) alleging violations of the Family Medical Leave Act (FMLA) of 1993 and  Title VII of the Civil Rights Act of 1964 ("Title VII"). CACC's Motion for Summary Judgment (Dkt No. 13) is ripe for ruling and deemed unopposed because the submission date has passed and Dimacali has not filed a response.[1] After careful consideration of the motion, arguments, record, and applicable law, the Court is of the opinion that CACC's Motion for Summary Judgment should be **GRANTED**.

## I.  Factual and Procedural Background

CACC is a full service medical practice group specializing in the prevention, diagnosis, and treatment of heart-related conditions. Dimacali originally interviewed for a Medical Assistant position with CACC in January 2002 and began working for CACC the following month. (Dimacali Dep., Dkt. No. 13, App. at 11—40, 17:10, 19:12—15.) At the time Plaintiff interviewed with CACC, she was between seven and eight months pregnant, and it was

---

1. *See* S.D. TEX. LOCAL RULES 7.3, 7.4 (providing that opposed motions will be submitted to the judge for ruling 21 days from filing, responses must be filed by the submission date, and failure to respond will be taken as a representation of no opposition). The deadline for Dimacali's response was April 2, 2010.  To date, Dimacali has not responded to CACC's Motion for Summary Judgment.

"apparent" to others that she was indeed pregnant. (*Id.* 16:20—25.) In April 2002, Dimacali gave birth to her son Francisco. (*Id.* 16:13—21.) Although Dimacali was not eligible for FMLA leave at that time because she had not yet worked at CACC for 12 months, CACC gave Dimacali a maternity leave of absence. (*Id.* 19:16—18.) When Dimacali returned to work, she assumed the same job responsibilities at the same rate of pay, and suffered no negative consequences for taking maternity leave. (*Id.* 23:18—23.) On the contrary, in December 2004, Dimacali was promoted and assumed additional job responsibilities, including various administrative tasks at CACC's Kingsville, Texas office. (*Id.* 24:8—25:13.)

In October 2005, Dimacali took FMLA leave for the birth of another son, John Ryan. (*Id.* 27:19—24.) Following maternity leave, Dimacali returned to work at the same rate of pay and in the same job position, and suffered no negative consequences for taking maternity leave. (*Id.* 30:13—24.) On the contrary, Dimacali was thereafter promoted to Office Manager/Medical Assistant and received a pay raise. (*Id.* 26:4—12.)

In November 2007, Dimacali began experiencing symptoms related to a third pregnancy, including shortness of breath and periodic heart palpitations. (*Id.* 37:10—15.) She requested, and was approved for, a leave of absence under the FMLA to rest and receive medical treatment, beginning November 19, 2007. (*Id.* 43:2—7.) Dimacali discussed her leave with CACC's CFO, Ms. Vicki Lewis ("Lewis"). (*Id.* 40:15—17.) Because Dimacali did not know how long her leave of absence would last, she agreed to call Lewis every month to provide a status report on her medical condition and expected date of return. (*Id.* 40:22—41:3.) Lewis said nothing negative to Dimacali about the leave, but did ask Dimacali to remove her personal belongings from the office and return her key because someone else would need to work in her office during her absence. (*Id.* 41:4—9; Lewis Aff., Dkt. No. 13, App. at 2.)

2

Although Dimacali was unsure how long her leave would last, based on her conversations with Lewis as well as the FMLA Notice (Dkt. No. 13, App. at 8), Dimacali understood that her FMLA leave would expire on February 16, 2008, at the end of the designated 12-week period. (Dimacali Dep. 43:2—44:20.) Dimacali and Lewis both assumed that Dimacali would be able to return to work by February 16, 2008, and Lewis intended for Dimacali to return to her job at that time. (*Id.* 43:11—14; Lewis Aff. at 2.) Consistent with their agreement, Dimacali called in monthly during her leave of absence and informed Lewis that she continued to experience heart palpitations and shortness of breath during her maternity leave, but that she expected that the symptoms would subside with medication. (Dimacali Dep. 48:1—14.) Also consistent with their agreement, CACC kept Dimacali's Office Manager/Medical Assistant position open, although other employees had to adjust their schedules in order to complete Dimacali's administrative work in her absence. (Lewis Aff. at 2—3.) Lewis also moved another CACC employee, Ms. Nancy Weed, from the Corpus Christi office to the Kingsville office in order to perform Dimacali's Medical Assistant duties. (*Id.*)

On February 15, 2008, the day before Dimacali's FMLA leave expired, her doctor had still not cleared her to return to work. (Dimacali Dep. 58:4—21.) Dimacali relayed this information to Lewis and said that she did not know when she would return to work, but that she had a doctor's appointment scheduled for March 5, 2008, at which time she would be re-evaluated. (*Id.* 59:5—11.) Dimacali further stated that it was "more than likely" that she would return to work by this date, but could provide no guarantees. (*Id.* 59:21—60:8.) On February 18, 2008, Dimacali received a letter stating that her 12 weeks of leave under the FMLA had expired on February 16, 2008, and that her employment had been terminated due to her inability to return to work at that time. (Dkt. No. 13, App. at 10.) The letter further provided that CACC welcomed

Dimacali's application for employment at its main office in Corpus Christi if she wished to be considered for employment in the future. (*Id.*)

Dimacali did not seek further employment with CACC, but instead filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on July 28, 2008, alleging discrimination based on gender (pregnancy) under Title VII; (2) disability under the ADA; and (3) discrimination for having taken a leave of absence under the FMLA. (Dkt. No. 13, App. at 41—45.) On April 20, 2009, Dimacali initiated the present action against CACC in the County Court at Law Number 2 in Nueces County, Texas, which CACC removed to federal court. (Dkt. No. 1.) In this action, Dimacali alleges discrimination based on five claims: (1) race under Title VII; (2) nationality under Title VII; (3) gender (pregnancy) under Title VII; (4) retaliation for engaging in a "protected activity;" and (5) discrimination under the FMLA. CACC now moves for summary judgment on all of Dimacali's claims.

## II.  Standard of Review

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). To prevent summary judgment, the non-movant must "respond by

setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations" or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Freeman v. U.S.*, 2005 WL 3132185, *2 (S.D. Tex. Nov. 22, 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## III.  Discussion

As noted *supra*, Dimacali did not respond to CACC's Motion for Summary Judgment, and the motion is therefore deemed unopposed. However, unopposed motions for summary judgment that dispose of litigation may not be automatically granted. *John v. Louisiana Bd. of*

*Trs. for State Colls. & Univs.*, 757 F.2d 698, 707—10 (5th Cir. 1985). The Court will thus address the merits of CACC's motion.

### A. Dimacali's Title VII Race, Nationality, and Retaliation Claims

"[B]efore a plaintiff can commence a civil action under Title VII in federal court, she must file a timely charge with the EEOC, or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." *Dao v. Auchan Hypermarket,* 96 F.3d 787, 789 (5th Cir.1996). Here, Dimacali filed a timely Charge of Discrimination with the EEOC (Dkt. No. 13, App. at 41), but she did not contend that she was subjected to discrimination based on her race or nationality in her Charge. Likewise, Dimacali's Charge failed to allege that she was the victim of retaliation. Because Dimacali has failed to exhaust her administrative remedies with respect to her Title VII claims for race/nationality discrimination and retaliation, CACC is therefore entitled to summary judgment as a matter of law on these claims.

### B.  Dimacali's FMLA Claims

Congress enacted the FMLA in 1993 to "entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition . . . ." 29 U.S.C. § 2601(b)(2). Under the FMLA, an eligible employee is entitled to a total of 12 weeks of leave during any 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). After a qualifying absence, the employer must restore the employee to the same position or a position comparable to that held by the employee before the leave. 29 U.S.C. § 2614(a)(1).

Dimacali claims that CACC violated the FMLA by failing to give her additional leave beyond the statutory 12-week time period. This allegation touches on prescriptive or substantive

FMLA rights and invokes entitlement or interference theories of recovery. *See Haley v. Alliance Compressor, LLC*, 391 F.3d 644, 649 (5th Cir. 2004). Claims for violations of these rights are brought pursuant to 29 U.S.C. § 2615(a)(1). *See id.* Dimacali further claims that she was terminated because she exercised her right to take maternity leave under the FLMA. This allegation fits within the FMLA's proscriptive rights and falls under the retaliation or discrimination theory of recovery. *See id.* Plaintiffs may bring claims for violations of proscriptive rights under 29 U.S.C. § 2615(a)(2). *See id.* The Court divides its analysis into two parts corresponding to the two theories of recovery.

### 1. Entitlement and Interference

A plaintiff may be entitled to recovery if she can prove that she was an eligible employee, that her employer interfered with, restrained, or denied her exercise of FMLA rights, and that she was prejudiced by the violation. 29 U.S.C. §§ 2615, 2617(a)(1); *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). As noted *supra*, among an employee's substantive FMLA rights are the requirements that the employer grant the eligible employee 12 weeks of leave for an FMLA-qualifying reason and that the employer reinstate that employee, upon return from a qualifying absence, to her former position or to an equivalent one. 29 U.S.C. §§ 2612(a)(1), 2614(a)(1); *Haley*, 391 F.3d at 649. The FMLA implementing regulations, however, stipulate that "if an employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA." 29 C.F.R. § 825.214(b). *See also Oatman v. Fuji Photo Film USA, Inc.*, 54 Fed.Appx. 413, *2 (5th Cir. 2002) (unpublished); *cert. denied*, 538 U.S. 978 (2003).

When Dimacali was medically unable to return to work following the expiration of her 12 weeks of FMLA leave, she lost the right to be reinstated to her former position as Office Manager/Medical Assistant with CACC. *See id.* Dimacali has cited no case or statute, nor is the Court aware of any authority, that would require CACC to grant Dimacali additional leave beyond the statutory 12 weeks. CACC did not violate the FMLA when it terminated Dimacali's employment, and is therefore entitled to summary judgment as a matter of law on Dimacali's entitlement claim under the FMLA.

### 2. Retaliation

A plaintiff also may be entitled to recovery if the employer retaliates against her for exercising her FMLA rights. 29 U.S.C. §§ 2615, 2617. Discrimination claims brought pursuant to the FMLA are not significantly different from similar claims brought pursuant to Title VII or other anti-discrimination laws. *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999). Therefore, in the absence of direct evidence, courts analyze FMLA retaliation claims, like Title VII claims, under the burden-shifting approach first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and recently modified in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), and *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004).

Under the "modified *McDonnell Douglas* approach," a plaintiff may trigger a presumption of discrimination by establishing a *prima facie* case. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005); *Rachid*, 376 F.3d at 312. To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must show that: 1) she engaged in a protected activity; 2) she suffered an adverse employment decision; and 3) causation connects the two. *Id.*

Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for its adverse employment action. *Id.* If the

defendant satisfies this burden, then the presumption of discrimination dissolves. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142—43 (2000); *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). The plaintiff must then offer evidence tending to show "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." *Rachid*, 376 F.3d at 312 (internal quotation and alteration marks omitted); *see also Richardson*, 434 F.3d at 333 (analyzing FMLA retaliation claim under the modified approach). If the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus. *Rachid*, 376 F.3d at 312.

Here, Dimacali claims that CACC terminated her employment because she engaged in a protected activity by taking a leave of absence under the FMLA. CACC claims it did not retaliate against Dimacali, but instead kept her job open during the entire period of time she was entitled to leave under the FMLA. However, CACC was forced to replace Dimacali after she was unable to return to work, as other employees had to rearrange their schedules and work locations in order to perform Dimacali's duties while she was out. The Court is satisfied that CACC has offered a legitimate, non-discriminatory reason for terminating Dimacali's employment, and Dimacali has failed to proffer evidence that CACC's reason is a pretext for discrimination. CACC is therefore entitled to summary judgment as a matter of law on Dimacali's retaliation claim under the FMLA.

### C. Dimacali's Title VII Gender/Pregnancy Discrimination Claim

Title VII prohibits discrimination by employers "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e2(a). As amended by the Pregnancy Discrimination Act of 1978 (PDA), Title VII defines the term "because of sex" as including, but not limited to, "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). To evaluate Title VII claims of gender/pregnancy discrimination based on circumstantial evidence, the Court applies the evidentiary burden-shifting framework derived from *McDonnell Douglas*, 411 U.S. 792, described at length in Part III.B.2, *supra*.

To establish her *prima facie* case of gender/pregnancy discrimination, Dimacali must show: (1) she belongs to a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) other persons who are not members of the protected group did not suffer the same adverse action. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Then the burden shifts to CACC to produce a legitimate, non-discriminatory reason for terminating Dimacali's employment. If CACC satisfies this burden, then the presumption of discrimination dissolves, and Dimacali must proffer substantial evidence showing that CACC's reason is only a pretext for discrimination. *See Reeves*, 530 U.S. at 142—43; *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002); *Rachid*, 376 F.3d at 312; *Richardson*, 434 F.3d at 333.

While Dimacali is a member of a protected class (pregnant women), she was not qualified for her position if she was not medically cleared to work at the time her leave expired. Moreover, CACC's failure to grant Dimacali additional leave of absence beyond the 12 weeks

provided under the FMLA does not constitute adverse employment action. Finally, Dimacali has

proffered no evidence that CACC took any action based on her pregnancy. On the contrary, as

CACC points out:

> Ms. Dimacali's evidentiary hurdles are understandable, considering that she was visibly pregnant (7½ to 8 months) when hired . . . . Dimacali herself is the proverbial "Exhibit A" that CACC does not discriminate based on pregnancy because she herself received two prior maternity leaves with no negative repercussions. In fact, following each leave she continued to receive promotions and pay raises.

(Dkt. No. 13 at 21.)

Because Dimacali is unable to establish her *prima facia* case of pregnancy

discrimination, this claim fails as a matter of law. CACC is therefore entitled to summary

judgment as a matter of law on Dimacali's Title VII gender/pregnancy discrimination claim.

## IV. Conclusion

For the forgoing reasons, CACC's Motion for Summary Judgment (Dkt. No. 13) is

hereby **GRANTED**.

It is so **ORDERED**.

Signed this 23rd day of April, 2010.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE